E. A. JONES, ASSIGNEE IN BANKRUPTCY, *vs.* MRS. E. K. NORTON.

BILL TO CANCEL DEED.

APPEAL FROM CIRCUIT COURT, FIRST CIRCUIT.

HEARING, APRIL 5, 1894.            DECISION, APRIL 23, 1894.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A conveyance made by one who more than two years afterwards was adjudicated a bankrupt will not, at the suit of his assignee in bankruptcy, be set aside on the ground that it was made in fraud of creditors, where it appears that it was made for a valuable consideration and that the grantee, who married the grantor the next day, took without knowledge that the grantor was insolvent or that the making of the conveyance would leave him insolvent.

It is competent in such case for the grantee to prove a consideration of both money and marriage, although the only consideration named in the conveyance is one dollar.

OPINION OF THE COURT, BY BICKERTON, J.

In 1890 George Norton was a clerk in the employ of Lewers & Cooke, receiving a regular salary. That firm gave Norton credit for lumber and material, and money to buy a lot and build a house, on the slope of Punchbowl Hill; at the time he owed several other small debts, and owned other property. On October 1st, 1890, Norton conveyed the property on Punchbowl Hill to Miss E. K. Komoikeehuehu, the consideration named in the deed being one dollar. The following day they were married. In January, 1893, the said Norton was adjudicated a bankrupt, and the complainant was appointed the assignee and duly qualified. In May, 1893, he brought this bill in equity to have the deed cancelled on the ground that it was made in fraud of his creditors, and

after demurrer and amendments, the matter came on to be heard on its merits January 15th, 1894; and after the close of the complainant's case the respondent's counsel moved that the bill be dismissed. The Court took the motion under consideration and on February 6th, 1894, Judge Cooper filed his decision, sustaining the motion, and dismissed the bill. Accordingly on February 12th, a decree was duly signed and filed. On the same day the complainant appealed from the said decision and decree to this Court, and the matter is now here on said appeal.

It seems to us that this whole matter depends on these questions :

First. What notice the respondent had of the financial condition of Norton at the date of the deed, did she have any reason to believe that he was insolvent, or that he was making this deed attempting to defraud or delay his creditors.

Second. What was the consideration for this deed of conveyance.

There are numerous authorities cited by counsel as to the effect of deeds from husband to wife. We do not see how this question can in any way enter into this case, for the deed now in question was executed on the day before the marriage. We have carefully reviewed the evidence in this case and fail to find any intention on the part of Norton to defraud or delay his creditors. We find that the principal creditors, Lewers & Cooke, knew what was to be done, and it was understood by that firm that a wedding present of $1200 that was to be made to respondent by her sister, was to be paid to them on account of Norton's indebtedness ; and this according to Mr. Cooke's own evidence was done. It is clear that the firm well knew the condition of Norton's affairs and his ability to pay his debts ; he was in their employ receiving wages at the rate of $150 per month ; they at that time had given him credit for $2600 and since then had given him further credit but did not consider it necessary to take a mortgage on his property. Mr. Cooke says he did not consider Norton insolvent, in fact it seems to us from the

evidence that Lewers & Cooke virtually gave their consent (if that was necessary); they raised no objection whatever to Norton's conveying this property to respondent; they were told that $1200 would be paid to them; they received it and accepted it. These are all undisputed facts. Norton became sick and was unable to attend to business, and lost his employment. This could not be foreseen, but resulted in his being adjudicated a bankrupt. There is not one iota of evidence to indicate that he contemplated bankruptcy at the time he made this deed, nor is their evidence to show that he was a bankrupt at the time. It is urged by the plaintiff's counsel that the making of the deed in question, made Norton in fact insolvent because it put out of his hands part of the property with which he could pay his debts. But the question before us is not what his condition was after he made the deed, but what the respondent knew of his condition at the time he made the deed. We will now take up the question as to what notice the respondent had of the financial condition of Norton. In the case of *Prewit vs. Wilson*, 103 U. S. Rep., p. 22, it was held that "a conveyance executed for a valuable consideration will be upheld against the creditors of the grantor, however fraudulent his purpose may have been, if the grantee had no knowledge thereof. 2nd. An ante nuptial settlement of lands though made by the settler with the design of defrauding his creditors, will not be set aside in the absence of the clearest proof of his intended wife's participation in the fraud." "In order to render a conveyance void for fraud on creditors, it is necessary that the grantee should have a knowledge of, and in some way participate in the fraud." This was the language of Sherwood, J., in *Fraser vs. Passage*, 63 Mich., 551, and a number of cases are there cited in support.

In *Strauss vs. Parshall et al.*, 51 N. W. Rep., p. 1117, (Mich.) it was held that a deed was valid where the grantee took the deed with no fraudulent intent.

In *Zick vs. Guebert et al.*, 31 N. E. Rep., p. 601, (Ill.) it was held that "a sale of land for two-thirds of its value though

made by an insolvent with intent to defraud his creditors, will not be set aside, where it appears that the vendee neither participated in the vendor's intent, nor knew of his insolvency."

We cannot find from the evidence that the respondent had any reason to believe that Norton was insolvent, or that he was even embarrassed. The mere fact that she knew he owed some debts, and that as she says, "the house was not all paid for," that there was a balance unpaid, would not of necessity, make her believe that he was insolvent at the time the deed was made. A man may owe large sums of money and still not be insolvent. We do not find that the respondent had any knowledge of, or participated in any fraud in connection with the deed in question. Mere suspicion of fraudulent collusion is not sufficient: it must be made out by clear preponderance of testimony. *Wilson et al. vs. Welsh et al.*, 41 Fed. Rep., p. 570, (S. Carol.) *Fraser vs. Passage, ante.*

The next question is, what was the consideration for the deed. We find there were two considerations, money and marriage. The deed does not state the consideration to be marriage, but one dollar. The $1200 paid to Lewers & Cooke was the respondent's own money, and in our opinion, was treated by all as a consideration for the deed; the evidence points to this beyond any doubt. The other, being marriage, is beyond any question a good consideration; it stands undisputed. In *Prewitt vs. Wilson, ante,* Mr. Justice Field says : "Now marriage is not only a valuable consideration, but as Coke says, there is no other consideration so much respected in the law." It has been held in the case of *Betts vs. Union Bank,* 1 Har. & G. Md., 175, that where a money consideration was expressed in the deed, and it was sought to prove that the money was not in fact paid and the real consideration was marriage, and substituted for the consideration named, it was repugnant to the averments of the deed and inadmissible ; but that is not this case. Here we have the two considerations passing ; the money was paid and the marriage took place ; there was no substituting. The execution of the

deed, the marriage, the payment of the $1200 was all one transaction, although the acts were not all done on one day and at one time. We are of the opinion that the considerations shown were good and valuable, and that the deed is valid.

The decree dismissing the bill is sustained, and the appeal dismissed.

*W. R. Castle,* for complainant.

*J. A. Magoon,* for defendant.